UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN AUBRY TURNER,<br><br>           Petitioner,<br>v.<br><br>KIM HOLLAND, Warden, California Correctional Institution, Tehachapi, California,<br><br>           Respondent. | Civil No. 14-CV-1966 GPC (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO DISMISS**<br><br>(Dkt. No. 7) |

John Aubry Turner, a prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus on August 11, 2014 (the "Petition").[1] (Dkt. No. 1 at 23-24.) Respondent now moves to dismiss the Petition on the basis that the statute of limitations for seeking habeas relief has passed, and therefore the Petition is untimely.[2] (Dkt. No. 7.) Petitioner opposes. (Dkt. No. 22.) For the reasons set forth below, this Court **RECOMMENDS**

---

[1] Under the "prison mailbox rule," a petition for a writ of habeas corpus is deemed filed on the day that it is delivered to prison authorities for mailing to the court. *See Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001). Petitioner notes that his Petition was complete on August 11, 2014, but that the facility was on lock-down from August 11 to August 13, when he mailed or handed the Petition to a correctional officer for mailing. (Dkt. No. 1 at 23-24.) For the purposes of analyzing the timeliness of the Petition, the Court will give Petitioner the benefit of the doubt and assume (without expressly finding) that Petitioner mailed his Petition on August 11, 2014.

[2] Respondent's superficial analysis of the issues raised by this motion did little to assist the Court in resolving the motion. The Court expects more from the Office of the Attorney General. If this situation reoccurs, the Court will require more thorough briefing and certification of review from a supervisor.

that the motion be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This motion is predicated on a procedural issue; therefore, the facts underlying the petition may be summarized briefly. Petitioner was convicted of seven counts of incest (Penal Code § 285), nineteen counts of unlawful sexual intercourse with a minor more than three years younger (Penal Code § 261.5), and one misdemeanor count of child molesting (Penal Code § 647(a)(1)). (Lodgment 2, Volume 2 (Dkt. No. 8-10 at 88).) Petitioner was sentenced to 9 years in prison on May 29, 2012. (*Id*. at 118-119).)

### B. Procedural Background

On July 24, 2012, Petitioner filed a timely notice of appeal in the San Diego Superior Court. Cal. R. Ct. 8.308(a); (Lodgment 2, Volume 2 (Dkt. No. 8-10 at 124); *see also* Lodgment 3 (Dkt. No. 8-11).) On November 6, 2012, the Court of Appeal sent Petitioner a letter informing him that if he did not file an opening brief within 30 days, his appeal would be dismissed pursuant to California Rules of Court, Rule 8.360(c)(5)(A)(iii). (Lodgment 4 (Dkt. No. 8-12 at 1).) The letter further notified Petitioner that the Court of Appeal's records showed that Petitioner was not represented by an attorney, that Appellate Defenders, Inc. would arrange for appointment of counsel, and that Petitioner had no right to represent himself on appeal. (*Id*.) Subsequently, Appellate Defenders, Inc. "informed the court that it has repeatedly provided [Petitioner] with 'Application for Appointment of Counsel' and 'Notice of Retained Counsel' forms." (Lodgment 3 (Dkt. No. 8-11); Lodgment 5 (Dkt. No. 8-13).) By December 12, 2012, Petitioner still had not returned either form, but he requested an extension of time to "allow communication with legal counsel." (*Id*.) The Court of Appeal granted Petitioner 30 days from December 12, 2012 to either retain counsel or apply for appointment of counsel. (*Id*.)

It appears Petitioner did neither. On January 23, 2013, the Court of Appeal dismissed Petitioner's appeal for failure to file an opening brief. (Lodgment 6 (Dkt. No.

8-14).) The Court of Appeal issued the remittitur on April 2, 2013. (Lodgment 7 (Dkt. No. 8-15).) On October 1, 2013, Petitioner filed a motion to recall the remittitur and reinstate the appeal.[3] (Lodgment 11 (Dkt. No. 20-1 at 1).) In his motion, Petitioner complained about "missing" testimony in the trial transcript and purported alterations to witness testimony, and claimed that he was unable "to retain private counsel and affidavits regarding the transcript discrepancies ... prior to the dismissal of the appeal." (*Id*. at 2-3.) The Court of Appeal denied the motion on October 29, 2013, reasoning that there is no right to self-representation in criminal appeals. (Lodgment 3 (Dkt. No. 8-11 at 2); Lodgment 8 (Dkt. No. 8-16 at 1)).

On March 10, 2014, Petitioner filed a habeas corpus petition in the California Supreme Court. (Lodgment 9, Volume 1 (Dkt. No. 8-17 at 82).) It was denied without comment on July 30, 2014. (Lodgment 10 (Dkt. No. 8-19).) On August 11, 2014, Petitioner filed his federal habeas petition. (Dkt. No. 1 at 23-24.)

## II.   AEDPA STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). AEDPA imposes a one-year period of limitation on petitioners to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d). The relevant section reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[3] Respondent states that Petitioner filed the motion to recall the remittitur on October 7, 2013, presumably relying on the clerk's file stamp of that date. (Dkt. No. 7 at 2.) However, under the "prison mailbox rule," absent other proof, the Court adopts the date Petitioner signed the motion for the purpose of determining when it was handed to prison authorities for mailing/filing. *See Bui v. Hedgpeth*, 516 F.Supp.2d 1170, 1172 (C.D. Cal. 2007).

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### A.    Date Conviction Became Final

Where a petitioner **does not** file a direct appeal, his conviction becomes final 60 days from the date of his sentence. *See* 28 U.S.C. § 2244(d)(1)(A) (judgment becomes final either "by the conclusion of direct review or the expiration of the time for seeking such review"); *see also* Cal. R. Ct. 8.308(a) ("[A] notice of appeal ... must be filed within 60 days after the rendition of the judgment...."); *Mendoza v. Carey*, 449 F.3d 1065, 1067 (9th Cir. 2006) (where petitioner did not appeal, "his conviction became final ... 60 days after the judgment of conviction"); *Lewis v. Mitchell*, 173 F. Supp. 2d 1057, 1060 (C.D. Cal. 2001) (where petitioner did not appeal, "the conviction became final 60 days after petitioner was sentenced....").

Where a petitioner **does** file a direct appeal in a lower appellate court, but no petition for review is subsequently filed in the California Supreme Court, the conviction becomes final within the meaning of 28 U.S.C. § 2244(d)(1)(A) on the last day the defendant could seek review of the appellate court opinion in the state supreme court, which is 40 days after the appellate court filed its opinion. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012); *Smith v. Duncan*, 297 F.3d 809, 813 (9th Cir. 2002); Cal. R. Ct. 8.366(b)(1) ("[A] Court of Appeal decision in a [criminal case], including an order dismissing an appeal involuntarily, is final in that court 30 days after filing."); Cal. R. Ct. 8.500(e)(1) ("A petition for review must be served and filed within 10 days after the Court of Appeal decision is final in that court.").

Here, Petitioner was sentenced on May 29, 2012. (Lodgment 2, Volume 2 (Dkt. No. 8-10 at 118-119)).  And although he filed a notice of appeal on July 24, 2012, his appeal was ultimately dismissed on January 23, 2013 because he failed to file an opening brief. (Lodgment 6 (Dkt. No. 8-14).)  If the Court finds that Petitioner's failure to file an opening brief constitutes a failure to file a direct appeal—the position Respondent advocates *(see* Dkt. No. 7 at 4)—his conviction became final on July 29, 2012, 60 days after his sentencing. *Mendoza*, 449 F.3d at 1067; Cal. R. Ct. 8.308(a).  If his notice of appeal is sufficient to be considered a direct appeal, Petitioner's conviction became final on March 4, 2013, 40 days after the Court of Appeal denied his appeal on January 23, 2013. *Gonzalez*, 132 S. Ct. at 653-54; Cal. R. Ct. 8.366(b)(1); Cal. R. Ct. 8.500(e)(1); (Lodgment 6 (Dkt. No. 8-14).)

The Court rejects Respondent's contention that Petitioner's failure to file an opening brief amounts to a failure to timely appeal. The California Rules of Court are clear that it is the **notice of appeal** that triggers the Court of Appeal's consideration of an appeal. *See* Cal. R. Ct. 8.308(a) ("[A] notice of appeal ... must be filed within 60 days after the rendition of the judgment...."). Respondent cited nothing in her brief to suggest otherwise. Instead Respondent argues, by analogy to *Randle v. Crawford*, that "the date of finality remains the date on which the date for filing a timely appeal expired, not the date the state appellate court dismissed the untimely appeal." (Dkt. No. 7 at 4 (citing *Randle v. Crawford*, 578 F.3d 1177, 1183-84 (9th Cir. 2009) ("Randle I").[4])  In *Randle*, the Ninth Circuit rejected the petitioner's argument that the "conclusion of direct review" in his case occurred on the date on which the Nevada Supreme Court dismissed his direct appeal as untimely. *Randle v. Crawford*, 604 F.3d 1047, 1054-55 (9th Cir. 2010) ("Randall II"). Instead, the date of finality was the date on which the deadline for filing a timely appeal expired. (*Id*. at 1050, 1057.) Similarly, Respondent here contends that January 23, 2013—the date the Court of Appeal dismissed Petitioner's appeal for failure

---

[4] Respondent should not have cited and relied upon the Ninth Circuit's 2009 opinion in *Randle I*, as it was amended and superseded by *Randle v. Crawford*, 604 F.3d 1047 (9th Cir. 2010) ("Randall II").

to file an opening brief—is inapplicable, and instead, July 29, 2012 (60 days after sentencing) is the date Petitioner's conviction became final. (Dkt. 7 at 4.) However, *Randle* is inapposite in that the defendant there did not file a timely notice of appeal, unlike Petitioner here. *Randle II*, 604 F.3d at 1050. Petitioner's timely notice of appeal initiated his appeal and thus Petitioner's conviction became final on March 4, 2013, 40 days after the Court of Appeal dismissed his appeal. *Gonzalez*, 132 S. Ct. at 653-54; Cal. R. Ct. 8.366(b)(1); Cal. R. Ct. 8.500(e)(1); (Lodgment 6 (Dkt. No. 8-14).)

### B. Timeliness of Petitioner's Habeas Petitions

By the time Petitioner filed his state habeas corpus petition in the California Supreme Court on March 10, 2014, more than a year had passed. (*See* Lodgment 9, Volume 1 (Dkt. No. 8-17 at 82).) He is not entitled to statutory tolling before March 10, 2014 because there is no tolling from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed. *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). And, importantly for Petitioner, statutory tolling is not available if the first state habeas petition is filed after the limitations period has expired. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Thus, it appears that Petitioner's federal habeas petition is time-barred as well, since it was mailed on August 11, 2014. (Dkt. No. 1 at 23-24.)

Additionally, even if Petitioner's state habeas petition had been filed before the expiration of AEDPA's one-year statute of limitations on March 4, 2014, there would likely be no basis for statutory tolling due to the untimeliness of Petitioner's state petition under state law. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that a state habeas petition is not "properly filed" for purposes of statutory tolling under AEDPA if the state petition was determined by the state court to be untimely as a matter of state law). California courts "appl[y] a general 'reasonableness' standard" to judge whether a habeas petition is timely filed. *Carey v. Saffold*, 536 U.S. 214, 222 (9th Cir. 2002). Absent a clear indication that a petition is timely, the federal court must decide whether the filing was made within what California courts would consider a "reasonable time."

*Evans v. Chavis*, 546 U.S. 189, 198 (2006) (citing *Carey*, 536 U.S. at 221). In general, a period of 30 to 60 days is reasonable, while a 6-month unexplained delay will likely be deemed "unreasonable." *Id.* at 201. Still, there are circumstances when a longer delay has been held reasonable under state law. *See Smith v. Small*, 513 Fed. Appx. 666, 667 (9th Cir. 2013) (holding 85-day delay reasonable because the petitioner was proceeding pro se and had limited access to his legal files while in protective custody); *Moore v. Clark*, 2008 WL 449706 at *3 (E.D. Cal. Mar. 25, 2008) (holding six-month delay reasonable because the petitioner was seeking transcripts from an evidentiary hearing during the delay.)

The issue here is whether it was reasonable for Petitioner to delay filing his state habeas petition until March 10, 2014, just over a year from the date his conviction became final. First, Petitioner contends that when the California Supreme Court denied his state habeas petition on July 30, 2014 (Lodgment 10 (Dkt. No. 8-19)), it failed to explain its reasons, and that such a summary denial means that the decision is considered an "adjudication on the merits." (Dkt. No. 22 at 12 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011).) Therefore, according to Petitioner, the state court did not deny his petition for untimeliness. However, the United States Supreme Court has clearly stated that a California state court's denial on the merits does not necessarily mean that the petition was timely. *Evans,* 546 U.S. at 194. Indeed, "where a California Supreme Court order simply states 'Petition for writ of habeas corpus ... is DENIED,' and does not contain the words "on the merits," it is even less likely that the California Supreme Court had considered the petition timely on the merits. *Trigueros v. Adams,* 658 F.3d 983, 990 (9th Cir. 2011) (citing *Evans,* 546 U.S. at 195, 197).

Second, Petitioner cannot explain his year-long delay. In the state petition form Petitioner used in the state supreme court, on the line where Petitioner was asked to explain any delay in raising the claims within the meaning of *In re Swain*, 34 Cal.2d 300, 304 (1949), he wrote that he was delayed because of the "denial of legal resources and law library access." (Dkt. No. 8-17 at 82.) Specifically, he stated that he had to purchase

legal reference manuals, his legal materials were confiscated for five months, he did not have access to case law for extended periods of time, and he "was forced to get case materials via mail." (*Id*. at 82-83.) Even if the Court credits Petitioner's arguments, that still does not explain a more than one-year delay. Therefore, the delay was "unreasonable" within the meaning of California law, and the state supreme court habeas petition was neither "properly filed" nor "pending" within the meaning of 28 U.S.C. § 2244(d)(2). *Chavis*, 546 U.S. at 199-200; *DiGuglielmo*, 544 U.S. at 413-14 (holding that denial of petition by California Supreme Court as untimely precludes statutory tolling). As a result, Petitioner's state habeas petition would not provide a basis for statutory tolling even if it had been filed prior to the expiration of AEDPA's one-year statute of limitations.

There is one final possibility for statutory tolling that the Court will explore, *sua sponte*. The Ninth Circuit has held that, where a motion to recall a remittitur acts as a habeas petition—rather than an attempt to reinstate the direct appeal—the motion can toll the statute of limitations for filing federal habeas claims. *Williams v. Harrison*, 368 Fed.Appx. 764 (9th Cir. 2010). However, the case on which *Williams* relies, *People v. Mutch*, 4 Cal.3d 389 (1971), distinguishes between the types of problems that evidence an attempt to reinstate a direct appeal and the types of problems that would entitle a petitioner to habeas relief, *i.e.*, allegations of ineffective assistance of counsel. *Mutch*, 4 Cal.3d at 396-97; *Williams*, 368 Fed.Appx. at 765-66. In Petitioner's motion to recall, he complained that he was unable "to retain private counsel and affidavits regarding the transcript discrepancies ... prior to the dismissal of the appeal." In other words, he argued that these difficulties excused his failure to perfect his appeal. (Lodgment 11 (Dkt. No. 20-1 at 1-3).) These difficulties do not rise to the level of claims of "judicial error of constitutional dimension warranting relief by habeas corpus." *In re Gray*, 179 Cal.App.4th 1189, 1198 (Cal. App. 3d Dist. 2009). Indeed, Petitioner himself argues that the purpose of his motion to recall the remittitur was "to enable it to take corrective action in the pursuit of legitimate state interests...." (Dkt. No. 22 at 16) (emphasis

added). Therefore, Petitioner's motion to recall the remittitur does not toll the statute of limitations, and the one-year statute of limitations had passed by the time Petitioner filed his state habeas corpus petition on March 10, 2014, and his federal habeas petition on August 11, 2014. (Lodgment 9, Volume 1 (Dkt. No. 8-17 at 82); Dkt. No. 1 at 23-24.)

### C. Equitable Tolling

Because statutory tolling does not save the Petition, the Court next considers whether equitable tolling is applicable. *Holland v. Florida*, 560 U.S. 631, 634 (2010) (holding that the one-year limitations period under AEDPA is subject to equitable tolling). Petitioner bears the burden of proving that equitable tolling is appropriate, and must establish that (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way of timely filing a petition. *Id.* at 649; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). The determination of whether a petitioner is entitled to equitable tolling is "highly fact-dependent." *Id.* (citing *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000)). Equitable tolling "is unavailable in most cases." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) ("[T]he threshold necessary to trigger equitable tolling (under AEDPA) is very high, lest the exceptions swallow the rule.")

In this case, Petitioner filed his Petition on August 11, 2014, more than five months after the statute of limitations expired on March 4, 2014. Therefore, for the Petition to be considered timely, Petitioner bears the burden of proving that he is entitled to approximately five months of equitable tolling between March 4, 2013 and August 11, 2014. *See Forbess v. Franke*, 749 F.3d 837, 840 (9th Cir. 2014). Petitioner cannot satisfy this burden.[5]

Petitioner here claims that he is entitled to equitable tolling because he

---

[5] A habeas petitioner should "receive an evidentiary hearing when he 'makes a good faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003). Here, however, even if the Court accepts as true Petitioner's good-faith allegations, Petitioner is still not entitled to equitable tolling.

"encountered ... intentional deprivation of legal resources, denial of access to the courts, mail tampering and mail withholding." (Dkt. No. 22 at 25.) He attaches some exhibits to reflect the aforementioned problems and demonstrate his diligence. (*See* Exhibit 6 (Dkt. No. 22 at 25, 89-98), which purportedly contains "inmate CDCR-22 requests (complaints) regarding access to the court's [sic], lack of law library access and mail tampering", all dated in 2012; Exhibit 7 (Dkt. No. 22 at 26, 99-106), which includes "receipts for legal manuals Petitioner was forced to acquire" in May through July 2012 due to the alleged lack of meaningful access to the law library; Exhibit 8 (Dkt. No. 22 at 107-110), which seemingly reflects a 602 appeal request regarding property that was confiscated from September 5, 2012 to February 25, 2013; Exhibit 9 (Dkt. No. 22 at 111-113), which is an October 2013 letter to San Diego's Office of the Assigned Counsel regarding Petitioner's difficulty obtaining his defense files from trial counsel; Exhibit 10 (Dkt. No. 22 at 114-118), which purportedly "demonstrates payments to third party services by outside sources to acquire copies of transcripts and case documents"; Exhibit 11 (Dkt. No. 22 at 119-127), which Petitioner claims reflects medical problems he had in 2012; Exhibit 12 (Dkt. No. 22 at 128-142), which includes a handwritten log documenting miscellaneous complaints, an inmate request form, and health care services form, all from September 2012; and Exhibit 13 (Dkt. No. 22 at 143-144), an email purportedly reflecting that law library workstations were shut down from January 6, 2014 until January 28, 2014.)

As an initial matter, Petitioner does not seem to have alleged much diligence during the time period in question, *i.e.*, from March 4, 2013 to March 4, 2014. Instead, much of what Petitioner submitted relates to a much earlier time-frame. From July 9, 2012 through November 19, 2012, Petitioner submitted CDCR 22 forms in an apparent effort to address issues regarding alleged court access, mail tampering, and law library access. (*See* Exhibit 6 (Dkt. No. 22 at 89-98.) He seems to have purchased legal manuals in 2012. (*See* Exhibit 7 (Dkt. No. 22 at 99-106.) Additionally, Petitioner's property was apparently confiscated from September 5, 2012 to February 25, 2013, and he complained

of such confiscation during that time. (*See* Exhibit 8 (Dkt. No. 22 at 107-110).) His handwritten log of complaints is also limited in time to September 2012. (*See* Exhibit 12 (Dkt. No. 22 at 12).) These exhibits pertain to pre-March 4, 2013 conduct.

Petitioner did, however, complain to the San Diego County Office of the Assigned Counsel in October 2013 about lack of access to his defense file from his trial counsel (the "OAC Letter"). (*See* Exhibit 9 (Dkt. No. 22 at 111-113).) Still, Petitioner does not explain what, if anything, he did to obtain a complete copy of his files from March 4, 2013 until the time he sent the OAC Letter. Lastly, Petitioner claims that payments were made to third-party companies on his behalf to acquire copies of transcripts and case documents. (Dkt. No. 22 at 28.) It appears that at least some of these efforts were made between March 4, 2013 and March 4, 2014.[6] (*See* Exhibit 10 (Dkt. No. 22 at 116, 118).) Despite these minimal efforts, the Court cannot say that Petitioner has established his diligence during the relevant time-period.

But more importantly, even if Petitioner did prove his diligence, he still is not entitled to equitable tolling for the independent reason that he cannot show that "an extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. Petitioner makes several arguments to excuse his untimely federal habeas filing, but as before, the Court will focus on the purported extraordinary circumstances during the relevant time-frame. First, as noted above, Petitioner claims that he did not (and still does not) have his trial counsel's file. (Exhibit 9 (Dkt. No. 22 at 111-113).) A complete lack of access to a legal file can justify equitable tolling. *See Espinoza-Matthews*, 432 F.3d at 1027-28. But Petitioner's allegations of limited access to his defense attorney's file do not rise to the level of extraordinary circumstances. The OAC Letter itself acknowledges that Petitioner received a "milk crate" containing his trial counsel's files. (Exhibit 9 (Dkt. No. 22 at 112).) Petitioner simply believes that what he received was not his full file from trial counsel. (*Id.*) Additionally, it is clear from

---

[6] The Court will assume that these payments are as represented by Petitioner because it is not clear from the face of the documents that payments were made on Petitioner's behalf or for his benefit.

Petitioner's motion to recall the remittitur, filed on October 1, 2013, that he had a copy of the record on appeal. (Lodgment 11 (Dkt. No. 20-1 at 2).) Indeed, Petitioner explicitly referred to his review of the trial testimony of multiple witnesses. (*Id.*) Thus, it is simply not the case that Petitioner is lacking his entire legal file. Moreover, Petitioner does not point to specific documents he needed but could not access. *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013-14 (9th Cir. 2009) ("[Petitioner] does not point to specific instances where he needed a particular document, could not have kept that document within his permitted three boxes had he been cooperative, and could not have procured that particular document when needed."). Lastly, it bears noting that while Petitioner has never had his defense attorney's entire "actual case file",[7] he was still able to file his Petition, albeit on August 11, 2014. Therefore, the Court cannot find that the purported lack of his defense attorney's entire file proximately caused Petitioner's failure to timely file the Petition. *See Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003) (petitioner entitled to equitable tolling "since prison officials' misconduct proximately caused the late filing.").

Second, Petitioner claims that he did not have sufficient access to the law library. (Dkt. No. 22 at 31.) Although Petitioner's allegations on this front are vague, it appears that from December 2012 through October 2013, Petitioner experienced issues with the availability of research stations due to reservations for different users, outages, and expired licenses for the computer software. (*Id.*) He acknowledges that during those times he was "just in the same boat as everyone else." (Dkt. No. 22 at 31.) Petitioner also specifically recalls the law library workstations being shut down from January 6, 2014 until January 28, 2014, when he was transferred to the California Correctional Institution ("CCI") in Tehachapi, CA, as well as access delays at CCI until February 20, 2014. (*Id.* (citing Exhibit 13 (Dkt. No. 22 at 143-144)).) However, these allegations do not give rise to equitable tolling. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009)

---

[7] Petitioner states that his "actual case file from his defense attorney is still not in his possession though OAC has volunteered to send them." (Dkt. No. 22 at 33.)

("Ordinary prison limitations on [a petitioner's] access to the law library and copier ... were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner."); *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (holding that equitable tolling was not available due to a prison law library that was missing a handful of reporter volumes and was staffed by helpers who were too busy to attend to prisoner, "given the vicissitudes of prison life."). The fact that Petitioner was able to file his motion to recall the remittitur on October 1, 2013 undercuts his argument that research impediments and delays caused the untimeliness of his Petition. And lastly, Petitioner has proved himself capable of locating necessary research materials, as evidenced by an affidavit of Randy McMillan stating that he ordered and shipped a variety of legal manuals to Petitioner in prison, at Petitioner's request. (*See* Dkt. No. 22 at 100.) Thus, the Court cannot find that Petitioner's issues with the law library proximately caused his inability to file his Petition by March 4, 2014. And because Petitioner has not alleged facts that would entitle him to equitable tolling, the Court will not order an evidentiary hearing. *See Roy*, 465 F.3d at 969.

### III.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the district court issue an Order:  approving and adopting this Report and Recommendation; and (2) granting Respondent's Motion to Dismiss.

**IT IS ORDERED** that no later than **February 5, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation.

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 19, 2015.**  The parties are advised that failure to file objections with the specified time may waive the right to raise

///

///

///

those objections on appeal of the Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 21, 2015

*[signature]*
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court